LARRY BELDNER, as Special Adm'r of the Estates of Judy M. Beldner, *et al.*, Deceased, and as Uncle and Next Friend of Brian Beldner *et al.*, Minors, Plaintiffs-Appellees, v. TENNESSEE STEEL HAULERS, INC., *et al.*, Defendants-Appellants (Dennis Wayne Beldner, Defendant and Counterplaintiff).

Fifth District No. 5—98—0306

Opinion filed January 28, 1999.

R.W. Wilson and William B. Starnes II, both of Edwardsville, for appellants.

Jack Carey, of Belleville, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Tennessee Steel Haulers, Inc. (TSH), and Jeffrey McNeely appeal from the denial of their motion to transfer venue from Madison County to Williamson County on the grounds of *forum non conveniens*. We affirm.

Dennis Beldner and his wife Judy were traveling through Williamson County with their six children on November 23, 1996. Judy and two of the children were killed after a collision occurred between the Beldners' van, driven by Dennis Beldner, and a truck, driven by Jeffrey McNeely and leased by TSH. Plaintiff, Larry Beldner, filed a wrongful death action on behalf of the next of kin. Recovery is also sought for personal injuries to the surviving children.

Defendants TSH and McNeely claim that all relevant factors favor the transfer of this case to Williamson County. Defendant Dennis Beldner did not file a motion to transfer venue and instead filed a position statement asserting that Madison County is the most convenient forum.

■ In *Peile v. Skelgas, Inc.*, 163 Ill. 2d 323, 645 N.E.2d 184 (1994), the supreme court revisited and reaffirmed the validity of *forum non conveniens* in Illinois. The *forum non conveniens* doctrine is premised on convenience and applies when convenience, fairness, and efficient judicial administration demand that a trial be held in a forum that bears a relationship to the litigation. *Bjurstrom v. Commonwealth Edison Co.*, 144 Ill. App. 3d 743, 746, 494 N.E.2d 801, 803 (1986). Under the doctrine, the private interests of the litigants and the public interests must be balanced by the circuit court in ruling on a *forum non conveniens* motion. *Schoon v. Hill*, 207 Ill. App. 3d 601, 605, 566 N.E.2d 718, 721 (1990).

■ The role of this court is not to substitute its judgment for that of the trial court or even to determine whether the trial court exercised its discretion wisely, but rather our role is to determine whether the trial court abused its discretion. *Elling v. State Farm Mutual Automobile Insurance Co.*, 291 Ill. App. 3d 311, 317, 683 N.E.2d 929, 934 (1997). As our supreme court reminds us:

> "In most instances, the plaintiff's initial choice of forum will prevail, provided venue is proper and the inconvenience factors attached to such forum do not greatly outweigh the plaintiff's substantial right to try the case in the chosen forum. If, however, the litigation has no practical connection to the forum, and a defendant establishes the necessary showing under the doctrine, the court should grant the motion for transfer." *Peile*, 163 Ill. 2d at 335-36, 645 N.E.2d at 190.

Thus, the doctrine defers to the plaintiff's choice unless a defendant can establish that convenience factors weigh strongly in favor of a transfer. *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 106, 554 N.E.2d 209, 211 (1990). Our task is to review whether the trial court "acted arbitrarily, without employing conscientious judgment, or whether, in view of all of the circumstances, the court

exceeded the bounds of reason and ignored recognized principles of law." *Mowen v. Illinois Valley Supply Co.*, 257 Ill. App. 3d 712, 714, 629 N.E.2d 176, 178 (1994).

■ Here, the trial court weighed the private-interest factors. These factors include the relative ease of access to sources of proof, the accessibility of witnesses, and a jury view of the scene of the accident, when appropriate, and all other practical problems that make the trial of a case easy, expeditious, and inexpensive. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 91 L. Ed. 1055, 1062, 67 S. Ct. 839, 843 (1947). We cannot find that the trial court abused its discretion with regard to these factors.

In the case at bar, all the defendants are non-Illinois residents; thus, venue is proper in any county. See 735 ILCS 5/2—101 (West 1996). Although the accident occurred approximately 120 miles from the plaintiff's chosen forum, the plaintiff-survivors are residents of Kirkwood, St. Louis County, Missouri, which is only 35 miles from Madison County. TSH is a Tennessee corporation that conducts business in Madison County. Madison County is 29 miles from Lambert International Airport, St. Louis. This airport is linked to the interstate highway system and is readily accessible to witnesses from distant places that travel by air. Williamson County is not served by a major airport.

At the time of the accident, defendant Jeffrey McNeely resided in Missouri, and he is now a Tennessee resident. McNeely would have to travel 128 interstate miles to get to the Williamson County courthouse and 211 interstate miles to get to the Madison County courthouse. Although this may pose some inconvenience to McNeely, we do not disagree with the trial court's conclusion that an additional 83 miles of travel for the trial is relatively insignificant. In addition, McNeely's occupation as an over-the-road truck driver puts him in a unique situation. The degree of inconvenience to him may well depend upon his route assignment at the time of trial.

Defendants list numerous postoccurrence witnesses, including the coroner, the firefighters, paramedics, and hospital personnel. The accident scene was diagrammed and photographed immediately following the collision, and such proof could be used at trial. Defendants have not demonstrated that the testimony of all the postoccurrence witnesses, or any significant number of them, will be necessary at trial. Indeed, it would seem that calling all, or any significant number of these witnesses, would either work to defendants' disadvantage or would provide cumulative testimony.

Even though the Beldners' initial medical care was provided in Williamson County, they claim that after their discharge from the

hospital, all care has been in the St. Louis metropolitan area. Because the Beldners' medical records and witnesses are in St. Louis, said evidence and witnesses would be closer to Madison County than Williamson County.

The police officers involved in the accident investigation are from Williamson County. Their travel time to Madison County is less than two hours. We cannot determine that the trial court's decision regarding these officers' utility at trial or their negligible travel inconvenience to attend trial in Madison County is an abuse of discretion.

Several witnesses, including Larry Beldner, the guardian and next friend of the minor plaintiffs, live out of state. Larry Beldner is a resident of South Carolina. One eyewitness, Cisnero Neckard, lives in Monroe, Louisiana. This case will undoubtedly involve expert witnesses, who may have to travel from out of state. Once again, Madison County is readily accessible via the Lambert International Airport in St. Louis. According to an affidavit filed by the plaintiffs, the only airline that services Williamson County is TWA Express. It provides service via a twin-engine prop plane, and all flights into Williamson County originate in St. Louis.

As for a jury view of the accident scene, given the nature of this case, it is highly unlikely that this will be necessary. Plaintiffs' primary allegation of negligence is that the defendant driver did not properly flag his truck before abandoning it on or near the roadway. The obvious argument in defense of this claim is that the van driver, Dennis Beldner, failed to keep a proper lookout in striking the abandoned truck. The vehicles have since been moved, and the roadway where the accident occurred can be accurately depicted by diagrams, photographs, videotape, or computer analysis. The road configuration is not a principal issue in this case, and it is unlikely that a jury view of the scene will be sanctioned.

■ The public-interest factors weighed by the trial court include an interest in having localized controversies decided at home, court congestion, and the burden of jury duty upon local citizens in an unrelated forum. See *Gulf Oil Corp.*, 330 U.S. at 508-09, 91 L. Ed. at 1062-63, 67 S. Ct. at 843.

■ The accident happened in Williamson County, and the residents there have an interest in the case. However, the allegation that defendant's truck was left on or near the edge of the highway without proper flares or warning devices is of concern in all Illinois counties, including Madison County. TSH does business in Madison County, and the citizens of Madison County have an interest in unsafe conditions on their highways, especially by companies conducting business within the county.

Defendants point out that as of December 31, 1996, Williamson County had 679 "L" cases pending, while Madison County had 5,976 "L" cases pending. Because sheer numbers present but a part of the equation, reviewing courts generally defer to trial courts for the assessment of the burden those numbers actually present. *Walker v. American River Transportation*, 277 Ill. App. 3d 87, 93, 660 N.E.2d 550, 554 (1996), citing *Boner v. Peabody Coal Co.*, 142 Ill. 2d 523, 539, 568 N.E.2d 883, 891 (1991). A closer look at the numbers suggests that Madison County may be better equipped to handle this case. Consider the following statistics for the 1997 calendar year:

|  | Madison County | Williamson County |
|---|---|---|
| "L" cases newly filed | 1249 | 204 |
| "L" cases disposed of | 1653 | 189 |
| "L" cases end pending | 4246 | 309 |

Administrative Office of the Illinois Courts, 1997 Annual Report to the Supreme Court of Illinois 16, 18.

In 1997, Madison County disposed of 404 more cases than were newly filed. Although far fewer new cases were filed in Williamson County, the courts in that county disposed of less cases than were newly filed. These figures suggest that Williamson County is not keeping abreast of newly filed cases. If Madison County, on the other hand, continues to dispose of more cases than are filed, its backlog will continue to dwindle.

Defendants also argue that on December 31, 1996, the average time lapse from filing to disposition for "L" cases over $50,000 in Williamson County was 20.7 months, compared to 33.2 months in Madison County. Administrative Office of the Illinois Courts, 1996 Annual Report to the Supreme Court of Illinois 56. The 1997 Annual Report of the Administrative Office of the Illinois Courts provides data showing that in 1997, the average time lapse for Williamson County increased to 22.8 months, compared to 27.2 months in Madison County. Administrative Office of the Illinois Courts, 1997 Annual Report to the Supreme Court of Illinois 56. Even though a greater volume of "L" cases has been filed in Madison County in recent years than in Williamson County, Madison County is disposing of more cases than are filed and has even improved the average time lapse for disposing of cases by six months. Thus, it seems that concern over court congestion does not favor transferring this case to Williamson County.

The role of this court is not to substitute its judgment for that of the trial court or even to determine whether the trial court exercised its discretion wisely, but rather our role is to determine whether the trial court abused its discretion. *Elling v. State Farm Mutual*

*Automobile Insurance Co.*, 291 Ill. App. 3d 311, 317, 683 N.E.2d 929, 934 (1997). The public- and private-convenience factors do not strongly weigh in favor of a transfer to Williamson County. We cannot find that the trial court abused its discretion.

We could, of course, end this opinion at this point. However, some time ago this court wrote an opinion which analyzed the intrastate *forum non conveniens* issue in a somewhat different way. We take this liberty to quote from that opinion.

"Digressing back to law school again, fledgling plaintiffs' lawyers are taught that if you have a choice of venue, file suit in the forum that is more likely to result in a greater reward for your client. Not only will you do your client a disservice by not filing where the recovery is apt to be greater (not to mention the disservice to yourself assuming a contingency fee), but a strong case for legal malpractice could be made if you purposefully neglect to consider the economic advantages of filing in one forum as opposed to another. Plaintiffs' lawyers are, of course, not the only ones 'shopping' for the best deal. Budding defense lawyers are trained to avoid certain fora like the plague. Statistical analyses are readily available to determine where the verdicts are prone to be high or low given the type of case involved. While there is authority that *forum non conveniens* motions are a tool for judges to use to discourage plaintiffs from jockeying for sympathetic juries (see *Torres v. Walsh* (1983), 98 Ill. 2d 338, 351, 456 N.E.2d 601, 607), the fact is that defense lawyers are just as likely to jockey for unsympathetic juries. Although this maneuvering has been criticized and characterized as 'incessant forum shopping,' in the real world of litigation it is done not only by plaintiffs but also by defendants, and it is appropriately done by both. The point is that both plaintiff lawyers and defense lawyers are properly looking out for their clients' best interests in their choices of fora and justifiably so. What then should be the guiding star when courts are faced with *forum non conveniens* motions?

Development of the doctrine of *forum non conveniens* was based on the notion that a court may resist imposition upon its jurisdiction where it becomes apparent that the plaintiff's choice of forum was part of a strategy to force the defendant to try the case at a most *inconvenient place,* even if the plaintiff himself was inconvenienced. (See *Gulf Oil*, 330 U.S. at 507, 91 L. Ed. at 1062, 67 S. Ct. at 842.) The court recognized that the general venue statute opened the door to those who sought not simply justice but perhaps justice blended with some harassment. (*Gulf Oil*, 330 U.S. at 507, 91 L. Ed. at 1062, 67 S. Ct. at 842.) The implication of the court's insight is that a court may grant a motion to transfer based on *forum non*

*conveniens* where the plaintiff's chosen venue is determined to be harassment and prejudicial to the defendant because of that harassment. On this note, it appears that in every other area of the law, where there is a reversal, the appealing party has demonstrated prejudice. We submit that to overcome the presumption that plaintiff's choice of forum is proper, defendant must demonstrate that denial of its motion to transfer venue will prejudice it. This is not a revolutionary idea, because defendant, as the movant, has always had the burden to prove that plaintiff's selection of venue was improper. (*Weaver v. Midwest Towing, Inc.* (1987), 116 Ill. 2d 279, 285, 507 N.E.2d 838, 840.) In so doing, defendant must set out specific facts, not conclusions, and show a clear right to the relief asked for.'' (Emphasis in original.) *Wojtonik v. Illinois Central R.R.*, 266 Ill. App. 3d 482, 487-88, 640 N.E.2d 355, 359 (1994), *vacated*, 159 Ill. 2d 583, 645 N.E.2d 207 (1995) (supervisory order). We are aware, of course, that the supreme court vacated that opinion, but unfortunately it did it in a supervisory order, which provides no guidance to this court.

For the reasons stated, the judgment of the circuit court is affirmed.

Affirmed.

KUEHN and HOPKINS, JJ., concur.